FILED

2005 Feb-28  AM 07:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BOYD EDWARD HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:00-cv-1599-VEH-TMP |
| | ) | |
| JERRY STUDDARD, KENNETH FLOWERS, | ) | |
| MURIEL FINCHER, DR. REY C. ALBA, | ) | |
| FRANK CANADA, and SGT. ROSE KEITH, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

This is an action by an Alabama state prisoner pursuant to 42 U.S.C. § 1983 and Alabama state law complaining about alleged violations of his constitutional and legal rights while incarcerated in the Talladega County Jail in 2000. The plaintiff alleges that his rights under the Eighth and Fourteenth Amendments were violated by the defendants when they failed to protect him from assault by other inmates in the jail and by failing to provide him with needed medical care for his serious medical injuries. The defendants deny that they violated the plaintiffs rights, and they have filed special reports responding to the complaint. For the reasons explained below, the action against the defendants is due to be dismissed.

Procedural History

Plaintiff filed his *pro se* complaint on June 1, 2000, naming as defendants Jerry Studdard, the Sheriff of Talladega County; Kenneth Flowers, the Talladega County Jail Administrator; Muriel Fincher, the jail administrative clerk; Dr. Rey C. Alba, a physician under contract to

provide medical services to jail inmates; and Frank Canada, a nurse employed by NaphCare to provide medical services to jail inmates.  Plaintiff later amended his complaint on December 8, 2000, to add as a defendant Sgt. Rose Keith, a jailer at the Talladega County Jail.  In both the initial and amended complaints, plaintiff attempted to state two claims: (1) that defendants Studdard, Flowers, and Keith violated his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment[1] by failing to protect him from attack by other prisoners; and (2) that defendants Alba, Canada, and Fincher violated his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment by failing to provide adequate medical care for his serious medical injuries.

The defendants responded to the complaint as amended with special reports on December 31, 2001, and January 2, 2002.  Dr. Alba and Nurse Canada subsequently substituted their signed affidavits on January 9, 2002 (Docs. 33 and 34).  Plaintiff filed a traverse to the special reports on February 28, 2002 (Doc. 41).  Defendants Studdard, Flowers, and Keith further supplemented their special report on March 25, 2003 (Doc. 46).  On February 3, 2004, a magistrate judge of the court notified the parties that the special reports would be treated as motions for summary judgment, and further explained the provisions of Rule 56 to the plaintiff (Doc. 49), who filed another traverse, essentially the same as the first, on February 24, 2004 (Doc. 51).

---

[1]  Plaintiff confirms that, at all times relevant to this action, he was a "state inmate," serving a sentence but awaiting transfer from the county jail to the Alabama Department of Corrections.  As such, his claims sound under the Eighth Amendment as extended to the states by the due process clause of the Fourteenth Amendment.

<u>Summary Judgment Standards</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Celotex</u>, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. <u>Celotex</u>, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all

justifiable inferences are to be drawn in his favor.  <u>Anderson</u>, 477 U.S. at 255.  The non-movant

need not be given the benefit of every inference but only of every reasonable inference.  <u>Brown v.</u>

<u>City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


Facts for Summary Judgment Purposes

Applying the standards discussed above to the evidence before the court, the following

facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-

moving plaintiff.

On March 24, 2000,[2]  plaintiff was housed in the Talladega County Jail as a "state

prisoner" awaiting transfer to the Alabama Department of Corrections to begin serving a

sentence for theft convictions.  While in Dayroom 170, plaintiff was attacked by four inmates

around 6:30 a.m.  The inmates accused the plaintiff of being a "snitch."  One struck him in the

face while the others attempted to drag him to the floor.  Plaintiff was punched and kicked by the

inmates, and one of them hit the plaintiff in the back of the neck with something hard, perhaps a

bar of soap in a sock.

After the assault, plaintiff sought medical attention from Nurse Canada, who scheduled

him to be examined by Dr. Alba that day.  Dr. Alba examined the plaintiff and found that he had

superficial bruises on his face, neck, back, and legs.  He commented to the plaintiff that "this

happens when you get in a fight."  Both Dr. Alba and Nurse Canada were employed by

---

[2]  This is the date the plaintiff's affidavit specifies as the date on which the assault occurred.
However, his original complaint averred the date to be March 15, while Dr. Alba's affidavit and
medical records show the date he was examined as March 22, 2000.  Plaintiff agrees that he was seen
by Dr. Alba the same day he was assaulted.

NaphCare, a company that had contracted with the jail[3] to provide medical services to inmates. Under the contract, Dr. Alba visited the jail twice weekly; Nurse Canada was on duty at the jail five days a week and on call twenty-four hours a day, seven days a week.

Plaintiff continued to experience pain from the assault, including pain in his chest, as if he had a broken rib.  A few days after the attack, his back ached, he suffered numbness in his left leg,  and he was unable to stand without assistance.  On March 24, 2004, Nurse Canada authorized the plaintiff to be transported to a local hospital emergency room for treatment.[4] There he was examined by the emergency room physician and underwent both x-rays and a CT scan, all of which were essentially normal.  The emergency room physician released the plaintiff to return to jail with a prescription for Lortab (for pain control) and a muscle relaxer.  Plaintiff never received the prescription medication, although he complained to Nurse Canada, who told him that Ms. Fincher said he did not need it.[5]

Upon his return to jail, plaintiff was placed in the protective custody unit where he remained for five weeks.  He continued to suffer chest pain, asserting that he had a broken rib that was growing back crooked and putting pressure on his stomach.  Throughout this time, plaintiff received Motrin, Tylenol, and other over-the-counter pain medications.

On April 25, 2000, plaintiff was moved back to a general population unit, although he

---

[3]  It is unclear with whom NaphCare contracted to provide services.  Ordinarily, the sheriff has day-to-day responsibility for running the jail, including providing necessary services to inmates. Nevertheless, the county has the responsibility of funding operations of the jail, including the obligation to pay for necessary medical care.

[4]  Although the medical records reflect the date of March 24, 2000, everyone agrees that it was two days after the attack that plaintiff was taken to the emergency room.

[5]  This statement, of course, is hearsay with respect to any assertion that Ms. Fincher, in fact, made such a statement.  Thus, the statement cannot be taken as evidence against Ms. Fincher, but reflects only the fact that Nurse Canada said this to plaintiff.

complained to Sgt. Keith that he was not safe and that he likely would be "jumped" again.  He told Sgt. Keith that it was probable that "unknown enemy inmates" would attack him.  There is no evidence that plaintiff was housed in the same cell block as any of the inmates that assaulted him in early March.  More than a month later, in the late-night hours of May 31, 2000, plaintiff was again attacked by six or seven inmates different from those that attacked him in early March.  These inmates also accused the plaintiff of being a "snitch."

Plaintiff received medical treatment early the next day, June 1, 2000, both at the jail and after being transported to the hospital emergency room.  An x-ray revealed a "nondisplaced fracture of the left 10th rib."  Although plaintiff contends that this fracture was left over from the March assault, there is no medical evidence to support that assertion.

On August 8, 2000, plaintiff was transferred from the Talladega County Jail to the Alabama Department of Corrections to serve out his sentence.  He was released from ADOC custody during February 2004.

Discussion of Claims

A.  Failure to Protect

Plaintiff's first claim is that defendants Studdard, Flowers, and Keith violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from harm by other inmates when they placed him in the general population of the jail in April 2000. He contends that, after he was attacked in March and spent five weeks in protective custody, he should not have been returned to the general population and, indeed, that he warned the defendants that he was likely to be attacked again.  On May 31, 2000, he was attacked again and beaten by six or seven inmates.

It is well settled that a prisoner has a constitutional right to be protected from the constant threat of violence and physical assault by other inmates.  Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986).  "[W]hen prison officials are or should be aware[6] of a danger posed to an inmate, they are obligated to take all reasonable steps to protect him, and the failure to do so may be an actionable constitutional wrong."  Hopkins v. Britton, 742 F.2d 1308, 1310 (11th Cir. 1984) (citing Gullatte v. Potts, 654 F.2d 1007 (5th Cir. Unit B, 1981)).  However, not every isolated incident of violence by one inmate toward another rises to the level of a constitutional violation for which jail officials may be liable.  Prison officials may be liable for deliberate indifference to a prisoner's constitutional rights "either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates."  Zatler, 802 F.2d at 400-01 (quoting Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984)).

However, the mere negligent failure to protect an inmate from attack does not give rise to a cause of action under § 1983.  Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986).  "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature.'"  Zatler, 802 F.2d at 400 (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)).  The Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), makes plain that the deliberate-indifference standard is a "subjective" one.  It is not enough for a plaintiff to show that a "reasonable" person

---

[6]  The "should be aware" language of some earlier cases now is obsolete and inapposite in light of Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), to the extent that the use of such language implies a standard less rigorous than deliberate indifference.

would have recognized the danger; rather, the plaintiff must show that the prison official "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, **and he must also draw the inference**." Id., 511 U.S. at 837 [emphasis added].  To be deliberately indifferent, the defendant must possess <u>actual</u> knowledge of the facts that constitute a substantial risk of serious harm.  Hence, the "should be aware" language of some earlier cases now is obsolete and inapposite in light of <u>Farmer</u>.   "Prison officials must have been deliberately indifferent to a **known** danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06, 97 S. Ct. 285, 291-92, 50 L. Ed. 2d 251 (1976))[emphasis added].  To constitute a substantial risk, "[t]he **known** risk of injury must be a 'strong likelihood, rather than a mere possibility' before a [defendant's] failure to act can constitute deliberate indifference." <u>Brown</u>, 894 F.2d at 1537 (citing <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1276 (11th Cir. 1989))[emphasis added].

The Eleventh Circuit summarized the standards to apply to this type of claim in the following manner:

> "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994); <u>see</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). "'[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'" <u>Farmer</u>, 511 U.S. at 833, 114 S. Ct. at 1976. (quotations and citations omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." <u>Id.</u> at 834, 114 S.Ct. at 1977.
>
>> "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk'...." <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1028 (11th

Cir. 2001)(en banc), quoting Farmer, 511 U.S. at 844, 114 S. Ct. at 1982-83.  "[T]o survive summary judgment on his section 1983, Eighth Amendment claim, [Plaintiff] was required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."

Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).  Again, as explained in Farmer, the term "deliberate indifference" means that the prison official "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., 511 U.S. at 837.

In this case there is no evidence from which it can be inferred that Sheriff Studdard, Administrator Flowers, or Sgt. Keith was actually aware of a "substantial" risk of harm to the plaintiff at the time of the second attack.[7]  While it is true that he had been called a "snitch" and attacked in March 2000, he was not returned to a population unit in which any of the March attackers were housed.  Although plaintiff was no longer in the one-man-to-a-cell incarceration of protective custody, there was no reason to believe that the inmates housed with him in the population unit were a threat to him.  Even plaintiff admits that he complained only about "*unknown* enemy inmates" possibly being a threat to him; he did not alert the defendants to any specific threat.  To be deliberate indifference to the plaintiff's right to protection from harm by other inmates, plaintiff must present some evidence from which it can be inferred that the

_____

[7]  Plaintiff does not attempt to argue that any jail official is liable for the first attack in March, 2000.  Rather, he argues that, once he was attacked in March, 2000, the defendants were on notice of the need to protect him at the time he was attacked the second time, on May 31, 2000.  His claim, therefore, focuses on the failure to protect in May, 2000.

defendants had actual knowledge of a "substantial" threat, that is, "the strong likelihood" of a threat to the plaintiff, and failed to take reasonable steps to prevent harm. The mere fact that plaintiff had been attacked once before could not have alerted the defendants to the "substantial" risk of a second attack by a completely different set of inmates. Likewise, while it may have been negligent to put plaintiff, with his reputation as a "snitch," in a general population unit, it cannot be said to have been deliberate indifference to his safety. Neither plaintiff nor the defendants were aware of any specific information indicating a risk to his safety in the population unit to which he was assigned. There were no preexisting threats; there is no evidence that plaintiff actually "snitched" on any other inmate in the unit.

Because plaintiff has failed to present evidence supporting an inference of deliberate indifference by the defendants, their motion for summary judgment on this claim must be granted.

B. <u>Inadequate Medical Care</u>

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991), quoting <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of jail officials must run counter to

evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983.  Bass v. Sullivan, 550 F.2d 229 (5th Cir.), cert. denied, 434 U.S. 864 (1977).

In Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985),  cert. denied, 475 U.S. 1096 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference.  The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions.  Barfield v. Brierton, 883 F.2d  923, 938 (11th Cir. 1989).  Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment.  "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference."  Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989).

Clearly, "not every injury or illness invokes the constitutional protection; only those that are 'serious' have that effect."  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3rd Cir. 1976.  Because society does not expect that prisoners will have unqualified access to health care, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  In Estelle, the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," those producing "physical 'torture or a lingering death,'" to "less serious cases," resulting from the "denial of medical care,"  which could cause "pain and suffering."  Estelle, 429 U.S. at 103.  A "serious" medical need has been defined as "one that has either been

diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention." Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977); see also Page v. Sharpe, 487 F.2d 567, 569 (1st Cir. 1973). It is the necessity and not the desirability of medical treatment sought which is important to the determination of whether medical officials have exhibited deliberate indifference. Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981).

The undisputed evidence in this case leaves little doubt that the defendants were not deliberately indifferent to the plaintiff's medical needs. First, plaintiff received medical attention from Nurse Canada and Dr. Alba the same day he was assaulted in March, 2000. Dr. Alba examined the plaintiff and concluded that he suffered only superficial bruising, and he prescribed Motrin and other pain relievers for the plaintiff. Two days later, when plaintiff continued to complain of pain, Nurse Canada authorized him to be transported to the local hospital emergency room where he was examined by the emergency room physician, x-rayed, and given a CT scan. These tests and evaluations produced no evidence of serious injury, and plaintiff was prescribed a stronger pain reliever, Lortab, and muscle relaxers. Even assuming that one or more of the defendants subsequently denied plaintiff access to the prescribed medication, plaintiff was not suffering from a "serious" medical illness or injury sufficient to warrant a finding of a violation of his Eighth Amendment right. Plaintiff's assertion that he suffered a broken rib in the March attack and that it grew back "crooked" is simply refuted by medical evidence. Neither Dr. Alba nor the ER physician found a broken rib in March, 2000, nor did cervical- and lumbar-spine x-rays reveal one. In the absence of some supporting medical evidence, plaintiff's bald assertion of a broken and "crooked" rib is not "substantial evidence," and it fails to create a genuine issue of fact on this point.

Likewise, after plaintiff suffered the second attack on May 31, 2000, he was promptly treated at both the jail and the local hospital.  On this occasion, a broken rib was diagnosed by x-ray, and plaintiff has offered no complaint or evidence about the inadequacy of medical treatment for that injury.

In conclusion, plaintiff's claim for denial of medical treatment is not borne out by the evidence, even viewed most favorably to him.  He received prompt and appropriate medical treatment commensurate with the injuries he suffered.  This claim is due to be dismissed.

C.  Remaining Claims

Although he did not plead them in his amended complaint, nor did he argue them in his traverse to summary judgment, plaintiff's original complaint also mentioned claims for jail overcrowding and exposure to dangerous and unsanitary conditions.  The factual allegations on the complaint, however, fail to show that plaintiff personally suffered any constitutional injury as a result of these conditions.  While the defendants admit that the jail is crowded, they have offered evidence concerning steps taken to reduce or eliminate the deleterious effects of the crowding.  See the Affidavit of Ken Flowers.  These include separation of inmates with serious crimes from younger inmates and those with less serious offenses, screening of inmates for illness and injury upon placement in the jail, protective custody, regular exercise, and medical treatment.  Plaintiff, on the other hand, has offered no evidence of any injury or illness he personally suffered due to either crowding or allegedly dangerous or unsanitary conditions.  Insofar as these claims survived the filing of the amended complaint, they are due to be dismissed.

Finally, plaintiff's amended complaint also attempted to plead claims under state law for

the assaults and alleged denial of medical care.  Because there is no substantial federal claim

remaining in this case, the state-law claims are due to be dismissed without prejudice under 28

U.S.C. § 1367(c).


<u>Conclusion</u>

By separate order, the court will grant the defendants' motions for summary judgment

with respect to plaintiff's claims under 42 U.S.C. § 1983, and those claims will be dismissed

with prejudice.  The court also will dismiss without prejudice all of plaintiff's state-law claims

pursuant to 42 U.S.C. § 1367(c).

DONE this 28th day of February, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge